Albert VANN, Annette M. Robinson, Roger L. Green, Phylius A. Burks, Walter Lawrence, Ronald Ashford, Charles L. Jones, and Katie L. Davis, Plaintiffs,

v.

BOARD OF ELECTIONS IN the CITY OF NEW YORK, Defendant.

No. 86 Civ. 6627.

United States District Court, S.D. New York.

Sept. 3, 1986.

Esmeralda Simmons, Brooklyn, N.Y., for plaintiffs Vann, Robinson, Burks, Lawrence, Robinson and Ashford.

William Wallace, IV, Brooklyn, N.Y., for plaintiffs Green, Jones and Davis.

Frederick A.O. Schwarz, Jr., Corp. Counsel, New York City, for defendant; Paul Marks, Asst. Corp. Counsel, of counsel.

KEVIN THOMAS DUFFY, District Judge.

Plaintiffs Albert Vann, Roger Green, and Annette Robinson, bring this Order to Show Cause seeking a preliminary injunction restoring their names to the ballot for the New York Democratic primary election to be held September 9, 1986. The other plaintiffs are registered voters and supporters of these candidates.[1] Alternatively, plaintiffs ask the court to stay the primary election.

Vann, an incumbent assemblyman filed a joint petition nominating him as a candidate for the position of Member of Assembly, 56th Assembly District, and Male Member of the Democratic State Committee, 56th Assembly District, with Robinson who was nominated for Female Member of the Democratic State Committee, 56th Assembly District, and other candidates for various other positions. Green, also an incumbent, filed a joint petition nominating him as a candidate for Member of the Assembly, 57th Assembly district. Plaintiff Robinson also filed a joint petition. The Board of Elections in the City of New York ("Board of Elections"), held the petitions valid after an administrative hearing, and placed petitioners' names on the primary ballot. Thereafter, the New York State Supreme Court, Kings County, reversed the Board of Elections' ruling and held that the petitions were invalid for failure to comply with the requirements of N.Y.Elec.Law § 6–134(2) (McKinney 1978 & Supp.1986) as interpreted by *Pecoraro v. Mahoney*, 65 N.Y.2d 1026, 494 N.Y.S.2d 289, 484 N.E.2d 652 (1985). Plaintiffs' names were then struck from the ballot. The defect found in the petitions was that the cover sheet failed to list the information required by Section 6–134(2),[2] including the number of

---

1. Numerous parties have made motions to intervene in this case. I have accepted their input as amici curia; the motions to intervene, however, are denied. I would like to note that the Memorandum of Law submitted by the New York Civil Liberties Union was especially well thoughtout and well written.

2. Section 6–134(2) reads:
   2. Sheets of a designating petition shall be bound together in one or more volumes. The sheets in each volume shall be numbered consecutively at the foot of each sheet, beginning with number one. There shall be a cover sheet attached to each petition consisting of ten or more sheets and each volume thereof. Each cover sheet shall indicate the office for which each designation and nomination is being made, the name and residence address of each candidate, the total number of pages comprising the petition, and the total number of signatures contained in such petition, except that such cover sheet need not contain the names and addresses of candidates for the position of member of the county committee if a list of the names and addresses of such candidates grouped by the election district in which they are candidates is filed together with such petition. If the petition is filed in two or more volumes, the cover sheet for each volume shall also contain the following additional information: the number of the volume, the total number of pages in the volume, the total number of signatures contained in the volume, and the numbers of the first and last pages contained therein. The cover sheet for any volume which contains petitions for the position of member of the county committee in addition to petitions for another office or position, shall also set forth the following information for each election district for which candidates for county committee are contained in such volume: the number of the election district, the numbers of the pages on

signatures received in support of each petitioner's candidacy, separately as it applied to each candidate. Plaintiffs' claim that the application of the *Pecoraro* rule in this case has a disproportionate effect on minority candidates and voters and that the proper procedures for giving notice of a new Board of Elections rule were not followed, in violation of the Voting Rights Act of 1965, as amended in 1982, 42 U.S.C. § 1971 et seq. (1982). Plaintiffs further claim that removal from the ballot is too harsh a penalty for their noncompliance with the cover sheet requirements. They argue that penalties less restrictive of their first amendment rights of association are available and should be employed as alternatives to the harsh remedy of removal from the ballot.

To obtain a preliminary injunction, plaintiffs must show: "(a) irreparable harm; and (b) either (1) probable success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary injunctive relief." *Kaplan v. Board of Education,* 759 F.2d 256, 259 (2d Cir.1985).

Plaintiffs meet the first part of the *Kaplan* test; that is, unless their names are restored to the ballot, they will be unable to enter the primary election. Moreover, voters who support these three candidates will be unable to choose them as the Democratic nominees for the posts they are seeking.

Thus, the issue becomes whether plaintiffs have shown a likelihood of success on the merits and a "balance of hardships tipping decidedly" in their favor. Simply put, this court must determine whether the requirement of a cover sheet separately stating the number of signatures for each candidate violates the Voting Rights Act of 1965, deprives anyone of his or her right to vote, or deprives anyone of his or her freedom of association.

*Voting Rights Act*

Although plaintiffs' Memorandum of Law in Support of Their Motion For a Preliminary Injunction ("Plaintiffs' Memorandum") mentions the Voting Rights Act only briefly, they argued at the hearing on the Order to Show Cause held September 2, 1986, that the *Pecoraro* rule was promulgated and applied without the proper notice to interested parties as required by the Voting Rights Act. During oral argument, however, plaintiffs conceded that, because *Pecoraro* was not a rule promulgated by the Board of Elections, but a case decided August 28, 1985 by the Court of Appeals, the Board of Elections was not required to notify anyone of the decision. Plaintiffs further argued that at the time of the *Pecoraro* decision it was understood to be an "aggregate deficiency" case and that a single cover sheet error would not require a candidate's removal from the ballot. This assertion is belied by the *Pecoraro* decision itself. In *Pecoraro,* the Court of Appeals found that the plaintiff's cover sheet did not give the total number of signatures designating the candidate for each office or the pages on which the signatures could be found. This single defect was found to completely frustrate the informational purposes of the New York election laws. That plaintiff's petition contained numerous other defects, which the Court stated were not "inconsequential" "when considered in the aggregate," *Pecoraro v. Mahoney,* at 653, does not change the basis of the *Pecoraro* decision. In *Ruiz v. Saez,* 68 N.Y.2d 154, 506 N.Y.S.2d 429, 497 N.E.2d 959 (N.Y.1986) the Court of Appeals stated, "as the *Pecoraro* memorandum makes clear, the petitions there involved would have been invalidated had there been no 'additional defects'." *Ruiz v. Saez,* 506 N.Y.S.2d at 431, 497 N.E.2d at 961.

■ In sum, *Pecoraro* is not a new rule subject to the notice and review provisions of the Voting Rights Act. Nor can plain-

which such candidates are designated, the total number of such pages and the total num-

ber of signatures on such pages.

tiff persuasively argue that *Pecoraro* is being interpreted and applied in a new way inconsistent with its holding. Thus, plaintiffs have shown no violations of the Voting Rights Act.

*First and Fourteenth Amendment*

Plaintiffs claim that the *Pecoraro* rule as applied to this case is an unconstitutional infringement upon their right to vote and their freedom of association. These rights are without question two of the most fundamental rights of our society and deserving of the highest degree of judicial protection. As Judge Keenan noted in *Farrell v. Board of Elections*, No. 85–6099, slip op. (Aug. 20, 1985) [Available, on WESTLAW, DCTU database], "Candidacy, in and of itself, has never been defined as a fundamental rights [sic]. The Supreme Court, however, has recognized that restrictions on candidacy impinge on the first amendment rights of candidates and voters." *Id.* at 11 (citations omitted).

■ The fact that ballot access laws in some manner affect these fundamental rights, however, does not automatically render them constitutionally infirm. As the Supreme Court has noted, "substantial regulation" is necessary to ensure the integrity of our electoral system. *Storer v. Brown*, 415 U.S. 724, 730, 94 S.Ct. 1274, 1279, 39 L.Ed.2d 714 (1974). "[T]he state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Anderson v. Celebrezze*, 460 U.S. 780, 103 S.Ct. 1564, 75 L.Ed.2d 547.

Thus, recognizing the fundamental nature of the rights involved, the court, in an inquiry such as this one, must

first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Anderson v. Celebrezze*, at 789, 103 S.Ct. at 1570.

■ In the *Anderson* case one of the primary purposes behind the State's early filing date was to protect the stability of the two major political parties. As such, it was specifically designed and intended to prevent access to the ballot by independents and other political parties. The regulation challenged in this case has no similar intent or effect. The cover sheet requirements are designed for the legitimate and necessary purpose of facilitating the review of candidates' petitions. "The State has the undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot...." *Anderson v. Celebrezze*, at 788 n. 9, 103 S.Ct. at 1570 n. 9. Similarly, the state has the right to enact rules, such as the cover sheet requirements, detailing the manner in which a showing of substantial support can be made.

In *Pecoraro* the Court of Appeals held that the cover sheet requirements are "not a mere formalism." *Pecoraro v. Mahoney*, 494 N.Y.S.2d at 289, 484 N.E.2d at 652. Without the specific information required by N.Y.Elec.Law § 6–134(2) to be summarized on the cover sheets, ambiguities might require election officials to spend inordinate amounts of time searching through volumes of petitions gathering this information.

In reference to the information required to be summarized on the cover sheets, the Court of Appeals stated "that data must be set forth in a manner reasonably calculated to give the requisite notice and information to the reader...." The fact that the Board of Elections does not claim to have had any difficulty processing plaintiffs' petitions in this instance does not render the requirement invalid. The cover sheet re-

quirements are reasonable regulations that further an important state interest.

It is important to note that *Pecoraro* has not been applied to all cases of petition deficiencies. Where the statutory purposes have not been frustrated by the petitions' deficiencies, the Court of Appeals has held that removal from the ballot is not required. In *Potter v. Dudek*, 68 N.Y.2d 154, 506 N.Y.S.2d 429, 497 N.E.2d 959 (1986) a joint petition was filed on behalf of two candidates. The cover sheet indicated that it contained 'in the aggregate 1,036 pages and 18,560 signatures' and that the signatures were 'for the above mentioned candidates.' Under those facts the Court of Appeals held there was no ambiguity in the cover sheets which would require the removal of the candidates' names from the ballot. Similarly, in *DePaolo v. Mahoney*, 68 N.Y.2d 154, 506 N.Y.S.2d 429, 497 N.E.2d 959 (1986), the Court of Appeals found no ambiguity and no cause for removing the candidate's name from the ballot where a petition was filed on behalf of one candidate running for two offices. The court held, "the presumption is overwhelming that a person endorsing [the candidate] for one local office also endorsed him for the other." *Id.*, 506 N.Y.S.2d at 432, 497 N.E.2d at 952.

In light of these cases it cannot reasonably be said that the *Pecoraro* rule is "hyper-technical." Instead it is a reasonable rule designed to further an important state interest.[3]

■ Plaintiffs' argument that the penalty of removal from the ballot for noncompliance with Section 6–134(2) of the New York election laws is too harsh is not really appropriately addressed to this court. Removal from the ballot is required under New York law. If there is to be a change it should properly be done through the medium of the New York State Legisla-

ture. While personally I would agree that the penalty exacted is by far too harsh, the resolution of this matter appropriately belongs with the state law makers in Albany. Either of the two incumbent assemblymen who are plaintiffs in this case can introduce the appropriate legislation. In any event, it would be destructive of our system of federalism, to have a federal court interpose itself to change state legislation merely because it is "too harsh."

In sum, plaintiffs have failed to show a likelihood of success on the merits sufficient to warrant granting their request for injunctive relief.

---

**3.** I am aware of the decision rendered September 2, 1986, in the Eastern District of New York by Judge Platt restoring the names of certain candidates, who had previously been removed from the ballot based on *Pecoraro*, to the ballot for the September 9, 1986 primary. While I am unable to discuss Judge Platt's decision in con-

text, I have been informed that that case involved a one volume petition in which the information contained on the cover sheet was clearly to be applied to both candidates. Thus, the instant case may be factually quite different from Judge Platt's.